**Joyce COPELAND and Charles Sullivan, Jr., Plaintiffs,**

v.

**Ronald R. HILL and Baystate Financial Services, Defendants.**

Civ. A. No. 87–2265–C.

United States District Court, D. Massachusetts.

Feb. 24, 1988.

Christopher Weld, Jr., Boston, Mass., for plaintiffs.

Michael A. Collora, Dwyer and Murray, Boston, Mass., for defendant Hill.

Andrew C. Griesinger, Choate Hall and Stewart, Boston, Mass., for defendant Baystate Financial Services.

## MEMORANDUM

CAFFREY, Senior District Judge.

The plaintiff brought this suit alleging violations of sections 12(1) and (2) of the Securities Act of 1933, 15 U.S.C. §§ 77*l*(1), 77*l*(2), violation of section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), breach of fiduciary duty, and violation of Mass.Gen.L. ch. 93A. The matter is now before the Court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. Although the defendant has labeled part of this motion as a motion under Fed.R.Civ.P. 12(b)(6), the plaintiff has submitted an affidavit containing several exhibits. The defendant's motion will therefore be treated as a motion for summary judgment under Rule 56. Fed.R.Civ.P. 12(b).

The plaintiffs, desiring to invest some money, were advised by the defendants to purchase some rare coins. The defendants informed the plaintiffs that Rare Coin Galleries of America (RCGA) was a reputable rare coin dealer, and provided the plaintiffs with promotional literature on RCGA.

According to this literature, the purchasers would buy rare coins from RCGA. The coins would, however, be selected by RCGA based on their professed expertise in the rare coin market. The gallery would also advise the purchasers when to sell the coins, and would help place the coins in auction houses, where the coins would be auctioned off. The gallery would also negotiate with the auction houses in order to obtain the lowest auctioneer's commission possible. There is no indication that RCGA was to receive any compensation other

than the profit received on the initial sale of the coins to the plaintiffs. The gallery also guaranteed that the coins sold were authentic and were accurately graded.[1] Much of the literature extolled the virtues of rare coins as an investment, and emphasized the relative advantages of investing in coins over investing in stocks or bonds.

The plaintiffs decided to invest in rare coins through RCGA, and paid the gallery $20,000. They never received their coins, and RCGA eventually filed for bankruptcy.

The defendants first argue that the counts alleging violations of federal securities laws should be dismissed for failure to state a claim upon which relief can be granted. The defendants contend that the contract for sale of rare coins is not a security within the meaning of the federal securities laws. Both parties agree that in order for the sale contract to come within the purview of the securities exchange laws, it must fall within the definition of an investment contract under 15 U.S.C. § 77b(1).

In *S.E.C. v. W.J. Howey & Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), the United States Supreme Court set out a three-pronged test for determining whether a transaction involves an investment contract. In *Howey*, the Supreme Court defined an investment contract as (1) an investment (2) in a common venture premised on the reasonable expectation of profits (3) to be derived from the entrepreneurial or managerial efforts of others. *Id.* at 298–99, 66 S.Ct. at 1102–03. *See also United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060–61, 44 L.Ed.2d 621 (1975).

The principle issue in this case is whether the sale of rare coins involved a common venture, thus satisfying the second prong of *Howey*. The requisites for a common venture are a much litigated issue that has resulted in a split among the courts. Some courts have adopted a "horizontal commonality" approach, some have

---

**1.** Coins are rated according to their relative physical condition. This rating is one factor in determining how valuable the coin is.

adopted a "vertical commonality" approach, while others use both. *Kaplan v. Shapiro,* 655 F.Supp. 336, 339 (S.D.N.Y. 1987). The horizontal commonality approach requires a pooling of the interests of a number of investors in order to establish a common enterprise. *Id.* at 339–40. The fortunes of each investor must be intertwined with the success of the pool. *See, e.g. Salcer v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 682 F.2d 459 (3d Cir.), *aff'd on other grounds,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) (commodity account not a security since there was no pooled group of funds) *Curran v. Merrill, Lynch, Pierce, Fenner and Smith, Inc.,* 622 F.2d 216 (6th Cir.1980), *aff'd on other grounds,* 453 U.S. 925, 102 S.Ct. 884, 69 L.Ed.2d 1020 (1982) (brokerage account not a security since there was no pooling of investors funds).

Among courts that have adopted the vertical commonality approach, there is disagreement over whether to apply the strict approach or the broader approach. Under the strict vertical commonality definition of a common enterprise, the "fortunes of the investor are interwoven with and dependent on the efforts and success of those seeking the investment or third parties." *S.E.C. v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476, 482 n. 7 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed. 2d 53 (1973). The person seeking the investment, or the third party who is providing the entrepreneurial skill, must share in both profits and losses with the investor. *Kaplan,* 655 F.Supp. at 341. If the person seeking the investment profits from the investment without sharing in the potential losses, there is no common enterprise under this view. *See Kaufman v. Magid,* 539 F.Supp. 1088 (D.Mass.1982) (there is no vertical commonality in a brokerage account since the broker worked on a commission basis).

The broad definition of vertical commonality has been adopted primarily by the Fifth Circuit. Under this approach, there must be a link between the fortunes of the investor and the efforts of the promoter, rather than between the fortunes of both as required under the stricter approach. *See S.E.C. v. Koscot Interplanetary, Inc.,* 497 F.2d 473 (5th Cir.1975). This view, however, has been expressly rejected by several courts, including courts in this district. *See, e.g., Kaplan v. Shapiro,* 655 F.Supp. 336; *Holtzman v. Proctor, Cook & Co., Inc.,* 528 F.Supp. 9, 16 (D.Mass.1981). As one court noted, the broad vertical commonality merges the second element of the *Howey* test with the third element, thus eliminating one prong. *Holtzman,* 528 F.Supp. at 16. I agree with this reasoning, and similarly reject the broad vertical commonality approach.

While the First Circuit Court of Appeals has not addressed the issue, this Court has adopted the strict vertical commonality approach. *Gaudette v. Panos,* 644 F.Supp. 826, 834 (D.Mass.1986), *modified by* 650 F.Supp. 912 (1987). The question, then, is whether RCGA's fortunes were tied directly to the plaintiffs' success in the rare coin market. *See Id.* The plaintiffs argue that commonality exists because RCGA guaranteed the coins' authenticity and the accuracy of the grading. Thus, RCGA stood to lose money if they selected coins that were not authentic, or if they improperly graded and valued the coins. In such a scenario, however, the plaintiffs would not lose anything, since RCGA would be obligated to refund the full purchase price plus 20% interest. The plaintiffs would not share in the losses incurred in that situation. The guarantee, then, does not establish a common enterprise. *See Kaplan,* 655 F.Supp. 336 (no commonality since the promoter guaranteed the return of the initial investment). More importantly, the gallery would not gain or lose anything if the coins had appreciated or depreciated in market value. The transaction entered into by the plaintiffs was more akin to a contract for the sale of goods and incidental services than to a common investment enterprise. The primary risks and rewards—appreciation or depreciation in market value—rested on the plaintiffs. Accordingly, the plaintiffs have failed to establish the exist-

ence of a common enterprise.[2] The transaction did not involve a security, as defined by the United States Supreme Court in *Howey.*

The plaintiffs rely primarily on *S.E.C. v. Brigadoon Scotch Dist., Ltd.,* 388 F.Supp. 1288 (S.D.N.Y.1975). In that case, as here, the defendants sold rare coin portfolios. The defendants chose the coins, and also provided a number of incidental services, such as insurance, tax advice, and accounting. *Id.* at 1292. There, the court found that a common enterprise did exist, and that the transaction was an investment contract under the *Howey* test. In that case, however, the court used the broad definition of vertical commonality. *See id.* at 1291–92. This definition, as noted, has been rejected by this and other courts. For this reason, I do not follow the decision in that case. The defendant's motion for summary judgment on Counts I, II and III should therefore be granted.

■ The remaining counts in the plaintiffs' complaint are state law claims over which this court has pendant jurisdiction. When a federal court has pendant jurisdiction over state claims, and the federal claims on which the pendant jurisdiction is based are dismissed, the court has discretion to hear the state claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Considerations of comity and accuracy, however, require a federal court to abstain from exercising this discretion when the federal claims are dismissed prior to trial. *Id.* at 726, 82 S.Ct. at 1139; *Bibbo v. Mulhern,* 621 F.Supp. 1018, 1031 (D.Mass. 1985). Accordingly, this court chooses not to exercise pendant jurisdiction over the state law claims. As such, Counts IV, V and VI should be dismissed for lack of subject matter jurisdiction.

Order accordingly.

---

**2.** The defendants also argue that the transaction also did not satisfy the third prong of the *Howey* test; that is, that the profits were not to be derived solely from the efforts of others. Since the second prong was not met, I do not reach this issue.