Cowin, J.
The plaintiffs, American Microtel, Inc. (“Microtel”), D&S Marketing, Mark Bowen (“Bowen”), John McMaster (“McMaster”), Mark Sheiner (“Sheiner”), Paul Tabora (‘Tabora”), and Michael Weiner (“Weiner”), seek judicial review of a decision of the Secretary of State of Massachusetts, acting through the Director of the Securities Division (“the Director”). The decision imposes sanctions on Microtel for violating several provisions of G.L.c. 110A, the Uniform Securities Act of Massachusetts (“the Act”). The conduct at issue involved the services Microtel offered in connection with the Federal Communications Commission’s (“FCC”) lottery for Multi-Channel MultiPoint Distribution Service (“MMDS”) (wireless cable television) licenses. The Director adopted the report of the Hearing Officer who ruled that the plaintiffs had illegally offered and sold a “wireless cable” investment program in Massachusetts without being registered to sell securities, and that the plaintiffs had misrepresented and omitted material information in connec *480 tion with their solicitation of Massachusetts investors. Microtel alleges generally that the Hearing Officer’s decision, as adopted by the Director, was not supported by substantial evidence, G.L.c. 30A, §14(7)(e), and was based upon errors of law, G.L.c. 30A, §14(7)(c). See Complaint, ¶10.
This Court concludes that the Hearing Officer’s findings and rulings are supported by substantial evidence and are in accord with the applicable law. Accordingly, the decision of the Director is affirmed.
BACKGROUND
Microtel, a Nevada corporation, is a wholly-owned subsidiary of Halo Holdings Group, Inc. (“Halo”). Through its Massachusetts branch office, D/S Marketing, Microtel offered a wireless cable television lottery application filing service to Massachusetts residents. Neither Microtel nor D/S Marketing were registered as securities broker-dealers in Massachusetts. See G.L.c. 110A, §§201(a), 401(c).
Microtel representatives led prospective Massachusetts investors to believe that they would be joining with Microtel and up to sixfy-five other applicants in a common enterprise which would put them in an ownership position in wireless cable television stations licensed by the FCC. Microtel’s oral and written solicitations indicated that it would prepare an FCC license application for its investors, take part in selecting the market(s) for which the license application should be filed, assist them in forming alliance groups to ensure receipt of a license, aid them in securing the financing and construction of an MMDS station, and manage that station once it became operational.
James D. Greenbaum (“Greenbaum”) is the Chief Executive Officer and majority shareholder of Microtel, and the officer and majority shareholder of Halo. Bowen, McMaster, Sheiner, Tabora, and Weiner worked for D/S Marketing as sales agents. Neither Greenbaum nor the D/S Marketing employees were registered as agents of a broker-dealer. G.L.c. 110A, §§201(b), 401(b).
On July 8, 1991, the Director initiated proceedings against Microtel alleging violations of the Act and issued a Temporary order to Cease and Desist. After extended hearings, the Hearing Officer for the Division of Enforcement issued a report containing detailed findings of fact and conclusions of law. His report was adopted by the Director, who, on May 7, 1993, issued a Final Order Imposing Sanctions. The Final Order: (1) directed the plaintiffs (respondents there) to cease and desist from violating §§101, 201, and 301 of the Act and the regulations promulgated thereunder; (2) prohibited the plaintiffs from destroying, altering or disposing of any books or records relating to the offer or sale of services of American Microtel to Massachusetts investors; (3) required plaintiffs to provide the Director with a list of every offer or sale of its services made to Massachusetts residents, including the name and address of each offeree; (4) held the plaintiffs jointly and severally liable for making a rescission offer to each Massachusetts investor who purchased services from Microtel; (5) imposed a $5,000.00 fine on Bowen, McMaster, Sheiner, Tabora, and Weiner; and (6) imposed a $5,000.00 fine on Microtel, D/S Marketing, and Greenbaum, for each offer made to a Massachusetts investor as shown on the list required by (3) above.
On May 21, 1993, the plaintiffs filed a Petition for Rehearing and/or Reconsideration of Hearing Officer’s Report and Final Order Imposing Sanctions. On September 2, 1993, the Director denied Microtel’s motion. This action followed.
DISCUSSION
I. Standard of Review
Judicial review of a decision of an administrative agency is governed by G.L.c. 30A, §14. The parly appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bds., 27 Mass.App.Ct. 470, 474 (1989). In reviewing the agency decision, the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992).
The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Regional Vocational School Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982). A court may not dispute an administrative agency’s choice between two conflicting views, even though the court would justifiably have made a different choice had the matter come before it de novo. Zoning Bd. of Appeals of Wellesley v. Housing Appeals Comm’n, 385 Mass. 651, 657 (1982). New claims may not be raised on appeal if they were not also raised at the administrative appeal. M.G. Gordon & Son, Inc. v. Alcoholic Beverages Control Comm’n, 386 Mass. 64, 73 (1982).
Review of an administrative agency’s decision under the substantial evidence test is limited; a court will uphold the agency’s decision “as long as the findings by the authority are supported by substantial evidence in the record considered as a whole.” Costello v. Department of Public Utilities, 391 Mass. 527, 539 (1984), quoting 1001 Plays, Inc. v. Mayor of Boston, 387 Mass. 879, 885 (1983). Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6). Almeida, supra at 341.
II. Claims of Error
Microtel cites four areas of error. First, Microtel claims that the Hearing Officer erred in finding that the Microtel service constitutes an investment contract and thus a security within the meaning of G.L.c. 110A, §401(k). Second, Microtel alleges that the Hearing Officer erred in ruling that Microtel violated the *481 antifraud provisions of the Act, G.L.c. 110A, §101(1)-(3). Microtel also contends that the Director acted improperly in issuing administrative subpoenas after he had commenced the adjudicatory phase of the case. Finally, Microtel alleges that the Director did not have personal jurisdiction over Greenbaum.
A. G.L.c. 110A, §401(k)
Microtel’s first claim concerns the Hearing Officer’s finding that Microtel’s service constituted an investment contract, and thus a security under G.L.c. 110A, §401(k).[2] In so ruling, the Hearing Officer relied on 950 CMR 14.401(N), which defines an investment contract as including:
any investment in a common enterprise with the expectation of profit to be derived through the efforts of someone other than the investor. As used in this subsection, a “common enterprise” means an enterprise in which the fortunes of the investor are interwoven with and dependent upon the efforts and successes of those seeking the investment or a third party.
This definition comports with the definition of an investment contract as set out in S.E.C. v. W.J. Howey Co., 328 U.S. 293 (1946), one of the seminal Federal cases in this area.[3] In Howey, the Court defined an investment contract as:
a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise. 328 U.S. at 298-99. See S.E.C. v. Joinder Leasing Corp., 320 U.S. 344 (1943).
Thus, under both Massachusetts and Federal law, the four essential components of an investment contract are: (1) an investment of money; (2) in a common enterprise; (3) with an expectation of profits; (4) derived from the efforts of a third party. In deciding whether a particular service is an investment contract, and hence, a securiiy, courts emphasize the substance of the transaction rather than the form, and look to the economic realities of each situation. United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 848 (1975). Microtel agrees that the Howey test is the appropriate method by which to gauge whether its services constituted an investment contract.
i) Investment of Money
The Hearing Officer found that the Microtel service satisfied the first prong of the Howey test — the investment of money. Administrative Record (“A.R.”) 723-25. He found that Microtel’s oral and written solicitations led offerees to reasonably believe that:
the $6,450 fee was a one-time “investment” which, through the efforts of Microtel and their affiliates, would be worth millions of dollars and result in a return in two years of approximately $20,000.00 in annual “investment” income for a purchaser. A.R. 699.
The record fully supports this conclusion. For example, Jay Alper (“Alper”), a Microtel offeree, testified that he spoke with a Mr. Hausser from Microtel about investing in the FCC MMDS lottery. A.R. 2471-72. He testified that he was informed that success was virtually guaranteed by joining with Microtel and the other investors, and that the price was $6,450.00. A.R. 2473. Alper testified that they discussed alliance or settlement groups, which were comprised of “the group of investors investing in the wireless cable television.” A.R. 2474. (Emphasis added.)
Alper also testified that he spoke with a Mr. Weston from Microtel, who indicated that Alper could expect a return of between $18,000.00 and $22,000.00 after two years. A.R. 2476-77. Alper stated that either Mr. Hausser or Mr. Weston told him that the value of the MMDS license “was in the vicinity of $3 million.” A.R. 2507.
The foregoing testimony supports the Hearing Officer’s conclusion that the $6,450.00 fee charged by Microtel was a one-time “investment.” While Microtel has consistently characterized the $6,450.00 payment as a mere fee rather than an investment, its contention is belied by the record. Microtel’s reliance on SEC v. Energy Group of America, 469 F.Supp. 1234 (S.D.N.Y. 1978), is misplaced.
ii) Common Enterprise
The Hearing Officer also found that the Microtel service satisfied the common enterprise prong of the Howey test. A.R. 725-27. Courts currently recognize two types of common enterprises — those involving horizontal commonality, and those involving vertical commonality.
Horizontal commonality occurs where the assets of two or more investors are pooled into a single investment fund. Schofield v. First Commodity Corp. of Boston, 638 F.Supp. 4, 7 (D.Mass. 1985), affd, 793 F.2d 28 (1st Cir. 1986).
Vertical commonality may be either broad or narrow. Broad vertical commonality occurs where the investor’s fortunes and promoter’s efforts are merely linked. Id. at 7, citing S.E.C. v. Continental Commodities Corp., 497 F.2d 516 (5th Cir. 1974); Lavery v. Kearns, 792 F.Supp. 847, 851 (D.Me. 1992). Narrow vertical commonaliiy occurs where the fortunes of the promoter and investor are interwoven, i.e., where “the broker’s fortunes are tied directly to the investor’s success ...” Schofield, supra at 7, citing Mordauntv. Incomco, 686 F.2d 815 (9th Cir. 1982), cert, denied 469 U.S. 1115 (1985). S.E.C. v. Glenn Turner Enterprises, Inc., 474 F.2d 476, 482 n.7 (9th Cir. 1973).[4] Although the First Circuit has not yet addressed whether broad or narrow vertical commonality is the appropriate standard under Massa *482 chusetts law for determining whether a common enterprise exists, the Federal District Courts of Massachusetts have adopted narrow vertical commonality as the correct standard. See Schofield, supra at 7; Morgan v. Financial Planning Advisors, Inc., 701 F.Supp. 923, 926 (D.Mass. 1988).
The Hearing Officer found that the Microtel service fell within vertical commonality.[5] A.R. 725-27. He based his decision upon Microtel’s explicit, implicit, and consistent representations to offerees that they would be “going into business together.” He found that a reasonable offeree would believe the foregoing representations to be true.
The record substantially supports a finding of narrow vertical commonality. In its solicitations, Microtel did in fact represent that it and its customers would be “going into business together” and that it would play a significant role in the development of an operational MMDS system. A.R. 830. Additionally, one of Microtel’s sales scripts, titled “Statements of Concern and Sincerity,” emphasized use of the following statement: “IF IT DOESN’T WORK OUT FOR YOU, IT DOESN’T WORK OUT FOR ME.” A.R. 920.
Microtel offeree John LaPlaca (“LaPlaca”) testified that he believed that Microtel was offering him “everything, soup to nuts, from an investment point [sic] to manager, they would manage the microwave station, they would seek financing, file my application, just about everything.” A.R. 2251. He testified that Microtel would do “tons of research,” and that the alliance group would minimize the risk. A.R. 2253-56.
Additionally, LaPlaca testified that Microtel indicated that it would play a management role, i.e., “building a station, securing the financing, pretty much administrative, marketing, just about everything.” A.R. 2260-61. Alper also testified that Microtel would play a management role and would form alliance groups. A.R. 2472-75, 2499.
iii)Expectation of Profits
The third prong of the Howey test is predicated upon the investor’s expectation of profits. The Hearing Officer found that on the basis of Microtel’s representations, “offerees reasonably believe that their investment will result in a profit by virtue of the Microtel team’s continuing involvement in the enterprise.” A.R. 727.
The record amply supports the conclusion that offerees expected to make a profit through the Microtel investment. One of Microtel’s sales presentations, entitled “AMERICAN MICROTEL, MONEY IN, MONEY OUT,” explicitly promises a high return on the initial investment. A.R. at 822. In fact, Microtel represented that an FCC MMDS license “could potentially be worth millions of dollars.” A.R. 1416. LaPlaca testified to projections given to him by Mr. Webber of Microtel concerning a sell-out value of $150,000.00 per investor after three years, and monthly dividends of $2,000.00 per investor. A.R. 2260. Alper also testified to an expectation of profits. A.R. 2477,2507.
iv)Managerial Efforts of Others
The final requirement needed to establish an investment contract under the Howey test requires that profits result from the efforts of third parties. The Hearing Officer found that none of the potential investors had any independent familiarity with the FCC MMDS lottery procedure or the MMDS industry generally, and were thus relying on the managerial efforts and experience of Microtel, A.R. 728.
The Hearing Officer’s finding is supported by substantial evidence. The record shows that Microtel represented that it would guide the offerees “every step of the way,” A.R. 830, and that the best way to receive the MMDS license award was “to have one of [Microtel’s] engineering firms, along with the other affiliates working for you." A.R. 837. LaPlaca testified that he understood that Microtel would hire engineers and do the basic study required by the FCC. A.R. 2252. Moreover, as discussed above, LaPlaca testified that Microtel would play a management role, A.R. 2259-61, as did Alper, A.R. 2274-75. Nancy Freeman (“Freeman”) a former employee of D/S Marketing, testified that she understood that the pre-filing research and actual filing of the application would be done for the alliance group. A.R. 2536. Accordingly, the final Howey requirement was met, establishing the Microtel service as an investment contract, and thus a security under Massachusetts law. A.R. 728.
v)Conclusion
After consideration of the record as a whole, the Court concludes that the Hearing Officer’s findings, and thus the Director’s, were supported by substantial evidence. The Hearing Officer was therefore correct in ruling that the Microtel service is an investment contract under Massachusetts law. Moreover, as discussed above, under Massachusetts law, securities include investment contracts. G.L.c. 110A, §401 (k).
Because the Microtel service was a security, the Hearing Officer was correct in ruling that Microtel and D/S Marketing were required to register as broker-dealers. See G.L.c. 110A, §§201(a) & (b). He was also correct in holding that Bowen, McMaster, Shiner, Tabora, and Weiner, as sales agents, were required to register with the Securities Division before offering the service to Massachusetts residents. Pursuant to G.L.c. 110A, §201 (a), it is unlawful for any person to transact business in Massachusetts as either a broker-dealer or an agent of a broker-dealer, unless registered under c. 110A.[6]
*483 B. G.L.c. 110A, §101(1) (3)
The Hearing Officer also found that Microtel made or had caused to be made, a variety of material misrepresentations of fact, A.R. at 733-35, and material omissions in its solicitation of customers, A.R. at 735-38, in violation of the antifraud provision of the Act. Microtel alleges that the Hearing Officer’s finding of misrepresentation was not supported by substantial evidence. This court disagrees. The antifraud provision, G.L.c. 110A, §101(l)-(3), provides:
It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly
(1) to employ any device, scheme, or artifice to defraud,
(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or
(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.
A material fact or omission is one that “would have been viewed by the reasonable investor as having significantly altered the ‘total mix’ of information made available.” Basic Inc. v. Levinson, 485 U.S. 224, 231-32, quoting TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976). The representations must be evaluated by the reasonable person standard. Quincy Cooperative Bank v. A.G. Edwards & Sons, Inc., 655 F.Supp. 78, 85 (D.Mass. 1986).
Generally, under securities laws, “statements of opinion which have a firm historical or factual basis are not actionable.” Norviüe v. Alton Bigtop Restaurant, Inc., 317 N.E.2d 384, 390 (Ill.App. 1974). However, “unfounded predictions of future performance are impermissible.” Id.
i) Material Misrepresentations
The Hearing Officer found that Microtel made a variety of material misrepresentations of fact. Each of those findings is supported by substantial evidence in the record.
First, the Hearing Officer found that Microtel misrepresented that it and its affiliates would be working with the purchasers in a common enterprise. While Microtel led prospective investors to believe that it would be working with them in a common enterprise, A.R. 2251-54, 2261, 2282-83, 2472, 2474, 2477-78, 2499, 2535-36, Microtel’s service contracts limited its obligations to filing the application and any required materials. A.R. 1575-79. This limitation was clearly at odds with Microtel’s consistent representations.
The Hearing Officer also found that Microtel misrepresented that success in the FCC MMDS lottery is virtually guaranteed using the Microtel strategy. A.R. 890,2254-58,2472-75,2534-39. Infact, success was far from certain. Greenbaumhimselftestifiedthat as of the date of the hearing, no lotteries had been held for areas in which Microtel’s applications had been filed. A.R. 3185. As a result, no Microtel customers had any success using the Microtel service.
The Hearing Officer found that Microtel misrepresented the potential return on the investment. Microtel represented that purchasers of the service can expect to have an investment vehicle worth millions of dollars and providing approximately $20,000.00 in annual income within a two-year period. A.R. 822, 1416, 2260, 2477, 2507. The record indicates that Microtel substantially overstated the potential value of the investment. The rural markets Microtel sought to tap may face significant competition from wired cable systems and satellite dishes. A.R. 2866, 3060-61. John E. Kane (“Kane”), the President and principal of Kane Reece Associates[7] testified that Microtel’s valuations as to the rate of return are “highly unlikely.” A.R. 2863.
Russell Ritchie (“Ritchie”), the President of MultiMicro, Inc., a license holder and consulting company in the wireless cable industry, A.R. 2975, testified that “to say categorically that any license is worth many times the investment is absolutely an exaggeration.” A.R. 3003. Moreover, Kane testified that it could take approximately eight years for an investor to recoup the initial investment and begin seeing a return. A.R. 2919.
Microtel represented that an MMDS license can be sold for a profit even if no system is established. A.R. 2259. However, the record is replete with evidence that an MMDS license has no intrinsic value. Jeffrey S. Rosen (“Rosen”), an attorney who practices primarily in securities law, so testified. A.R. 2680, 2738. Dean Manson (“Manson”), an investment banker with Multiple Southwest Investment Corporation (“MSIC”), testified that the MMDS license is a “liability.” A.R. 2759.
The record also supports the Hearing Officer’s finding that Microtel misrepresented the profitability of the rural areas on which Microtel focused. A.R. 843. Such markets may not be profitable due to both geophysical and topographical obstructions which may interfere with signal transmission, A.R. 3051-52, as well as competition from wired cable television and satellite services. A.R. 2866, 3060-61.
Microtel represented that the success achieved by the Corpus Christi MMDS system is comparable to the success that could be expected with the rural markets sought by Microtel. A.R. 843, 1455-58. The Corpus Christi system, however, is for a major metropolitan area, and has thirty-one operational channels — the largest number of channels in use by any MMDS system. A.R. 3014. The Corpus Christi system also reaches approximately 108,000 homes and attracts *484 13,000 subscribers. A.R. 843, 2990-91. In contrast, in addition to the potential signal obstructions and competition discussed above, the rural markets may experience difficulty in increasing the number of channeis beyond the eight bands secured by the award of an MMDS license. A.R. 3014-19.
The record also contradicts Microtel’s representation that debt financing is readily available. Ritchie testified that debt financing has generally been unavailable in this field. A.R. 3042-45.
Finally, the record supports the Hearing Officer’s finding that Microtel misrepresented that the opportunities for gain through the MMDS lottery are comparable to those available through cellular telephone lotteries. Kane testified that cellular licenses have a substantial value. A.R. 2938-40. As discussed above, the record supports a finding that an MMDS license has no intrinsic value.
ii) Omissions
In addition to the above misrepresentations, the Hearing Officer found that Microtel omitted many material facts in its solicitations. He ruled that “(t]he . . . omissions of material facts made or caused to be made by Respondents to offerees in the solicitation of customers are significant enough, in and of themselves, to affect the decision of an offeree and, therefore, constitute a violation of the Act. G.L.c. 110A, §101.” A.R. 738. The Hearing Officer’s findings are supported by substantial evidence in the record.
The Hearing Officer found that Microtel failed to inform offerees that its integrated service contracts strictly limit Microtel’s obligations to filing the MMDS license application and any required exhibits at the FCC. Nancy Freeman, a former D/S Marketing employee, testified that when she informed Weiner about her discomfort due to Microtel’s disclaimers, he downplayed the differences and reassured her that it would be “okay to invest.” A.R. 2597-98.
The record supports the Hearing Officer’s finding that Microtel failed to inform offerees that no Microtel clients have achieved success in the FCC lottery using the Microtel strategy. A.R. 3185.
The Hearing Officer found that Microtel failed to inform offerees that the license awarded by the FCC is conditional and subject to challenge. He found that none of the offerees “demonstrated an understanding that success in the FCC lottery resulted in the award of only a conditional license which could be subject to challenges and require the expenditure of additional funds to preserve.” A.R. 700 n.4. This finding is supported by the testimony of LaPlaca, A.R. 2254-58, Alper, A.R. 2472-75, and Freeman, A.R. 2534-39. Additionally, Microtel’s promotional literature did not disclose that the FCC license was conditional. A.R. 1462.
There is substantial evidence to support the Hearing Officer’s finding that Microtel failed to disclose the fact that there can be significant delays between the filing of an application and the actual lottery drawing, Kane and Ritchie testified to significant backlogs at the FCC. A.R. 2928, 3034.
The Hearing Officer also found that Microtel failed to inform offerees that there can be significant delays between the award of a license and the establishment of an MMDS system. This finding has support in the record. Ritchie testified that “it can take many years after the conditional license is granted before you actually can have an operation system that’s generating revenue.” A.R. 3036.
Microtel also failed to inform offerees that there can be difficulty in securing additional bands to increase channel capacity. Ritchie testified to such difficulties. A.R. 3014-19.
The Hearing Officer found that Microtel failed to inform offerees that the “letter of reasonable assurance” issued by MSIC is not a firm commitment to finance any MMDS system. Manson testified that the letter of reasonable assurance from MSIC is not a commitment, and that it contains three or four restrictions. A.R. 2769.
The record supports the Hearing Officer’s finding that Microtel failed to inform offerees that the successful Corpus Christi MMDS system it has consistently represented as an example of a successful MMDS system was experiencing financial difficulties and was unable to continue adding subscribers. A.R. 2990-91. Additionally, Microtel failed to inform offerees that two major metropolitan MMDS systems, MetroTen (Cleveland, Ohio), and Microband Corporation (Washington, D.C.), had filed for bankruptcy.
Finally, the Hearing Officer concluded that several of Microtel’s misrepresentations amounted to omissions as well, such as Microtel’s failure to inform offerees that the rural areas may confront geophysical and topographical obstacles, and Microtel’s failure to inform offerees that MMDS lotteries differ significantly from cellular lotteries. These findings are supported by substantial evidence. A.R. 2938-40, 3051-52. See Section B(i), supra.
iii) Conclusion
As the above discussion demonstrates, the record contains substantial evidence to support the Hearing Officer’s finding that Microtel made both material misrepresentations and omissions in its solicitations. As the Hearing Officer ruled, these misrepresentations and omissions violated §101 of the Act.
C. Issuance of Subpoenas After Commencement of Adjudicatory Proceeding
Microtel’s third claim of error is that the Director improperly issued two investigative subpoenas after he had initiated adjudicatory proceedings. See G.L.c. 110A, §§407, 407A. Microtel contends that as a re *485 spondent, it does not have investigatory powers on par with that of the Director, and that the Director’s use of such powers during an adjudicatory proceeding gives the Securities Division an unfair advantage over private litigants. This court disagrees; the Director properly utilized the powers conferred upon the Securities Division by statute. Courts have upheld the use of investigative subpoenas in analogous situations. See, e.g. F.T.C. v. Browning, 435 F.2d 96, 102-04 (D.C.Cir. 1970) (upholding post-complaint subpoena power of the Federal Trade Commission); Porter v. Mueller, 156 F.2d 278, 279-80 (3rd Cir. 1946) (upholding post-complaint subpoena power of Price Administrator under the Emergency Price Control Act of 1942); Bowels v. Bay of New York Coal & Supply Corp., 152 F.2d 330, 331 (2nd Cir. 1945) (same); Sutro Bros. & Co. v. S.E.C., 199 F.Supp. 438, 439 (S.D.N.Y. 1961) (institution of public proceedings against brokerage firm did not restrict S.E.C.’s investigative powers). The cases cited by Microtel, most of which concern the grand jury process, do not require a contrary conclusion.
D. Personal Jurisdiction
Microtel’s final argument is that the Director does not have personal jurisdiction over Greenbaum. Microtel claims that the fact that Greenbaum is alleged to be a principal of Microtel is an insufficient basis upon which to charge him for the conduct of the company. It further alleges that Greenbaum has “done no act and has engaged in no conduct within the jurisdiction of the Commonwealth or the Securities Division.” Microtel is incorrect on both counts.
First, the Hearing Officer found that Greenbaum controlled both Microtel and Halo. A.R. at 696, 712. Greenbaum’s own testimony supports this finding. A.R. at 3207-08. As a controlling person, Greenbaum is subject to joint and several liability under G.L.c. 110A, §410(b), which provides:
Every person who directly or indirectly controls a seller liable under subsection (a), every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller . . .
The argument regarding lack of personal jurisdiction over Greenbaum is without merit. The Director had personal jurisdiction over Greenbaum pursuant to G.L.c. 110A, §414(h), which provides:
When any person, including any nonresident of the commonwealth, engages in any conduct prohibited or made actionable by this chapter or any rule in order hereunder, and he has not filed a consent to service of process under subsection (g) and personal jurisdiction over him cannot otherwise be obtained in the commonwealth, that conduct shall be considered equivalent to his appointment of the secretary or his successor in office to be his attorney to receive service of any lawful process in any non-criminal suit, action or proceeding against him or his successor, executor, or administrator which grows out of that conduct and which is brought under this chapter or any rule or order hereunder, with the same force and validity as if served on him personally.
Contrary to Microtel’s assertion, the Massachusetts long-arm statute, G.L.c. 223A, is inapplicable to administrative proceedings. By its terms, the long-arm statute applies only to the exercise of personal jurisdiction by a court.[8]
ORDER
For the foregoing reasons, it is hereby ORDERED that the decision of the Director of the Securities Division of the Secretary of State of the Commonwealth of Massachusetts be AFFIRMED.

G.L.c. 110A, §401(k) expressly includes investment contracts within the definition of a security.

In Valley Stream Teachers Federal Credit Union v. Commissioner of Banks, 376 Mass. 845, 858 (1978), the Supreme Judicial Court noted the propriety of considering analogous Federal decisions when construing §401(k).

Microtel incorrectly alleges that Glenn Turner sets forth the definition of broad, rather than narrow vertical commonality. See Lavery, supra at 852 (citing Glenn Turner as an example of narrow vertical commonality); Copeland v. Hill, 680 F.Supp. 466, 468 (D.Mass. 1988) (same).

Microtel contends that the Director has taken the erroneous position that horizontal commonality is sufficient to support a common enterprise. While it is true that the Director has argued that horizontal commonality is satisfied (Defendant’s Brief at 14), the Hearing Officer expressly found narrow vertical commonality, which Microtel concedes is the appropriate standard. The Court agrees with the Director’s assertion that the record contains substantial evidence to support a finding of horizontal commonality. A.R. 1435-36, 2266, 2473-75, 2535.

The Hearing Officer was also correct in finding Greenbaum liable as a “control person.” See Section D, infra.

Kane Reece Associates is a valuation and management technical consulting firm. A.R. 2834. At the request of Microtel’s counsel, Kane Reece Associates issued a “Commentary on Certain Points Raised by the Commonwealth of Massachusetts With Respect to MMDS Licensing Services Provided by American Microtel, Inc.” in connection with this matter.

the Court agrees with the Director’s argument that if the long-arm statute were applicable, it would reach Greenbaum under §3(a).